[Civ. No. 23193. Second Dist., Div. Three. Feb. 2, 1959.]

HARMON ENTERPRISES, INC. (a Corporation), Appellant, v. GLENN A. VROMAN et al., Respondents.

Leon L. Gordon for Appellant.

Elmer H. Howlett and Walter H. W. Weiler for Respondents.

PATROSSO, J. pro tem.*—Action to quiet title to real property.

The trial court adjudged that neither plaintiff nor defendants were entitled to a judgment quieting title to the property in question and plaintiff appeals.

The complaint is in the usual form alleging that plaintiff is the owner of the property therein described; that defendants claim and assert an interest therein adverse to plaintiff; that the claims of the defendants are without right and that the defendants have no right, title or interest therein or thereto. Defendants Glenn A. Vroman and Lettie Vroman filed an answer denying the allegations of plaintiff's complaint and affirmatively alleging ownership in themselves by adverse possession.

There is no serious dispute with respect to the facts. The subject property consists of a lot in the city of South Gate improved with a small dwelling. On February 18, 1935, the record title stood in the name of Lew Moch, a single man, who on that date executed an agreement of sale thereof to Harold A. and Anna Belle Lamont.[1] The interest of the Lamonts was assigned to Arthur C. Wright by an instrument

---

[1]The sales price provided in this agreement is $2,750, of which $50 was paid down upon the execution of the agreement and the balance of $2,700 is payable in monthly installments of $25 including interest at the rate of 7 per cent per annum on the 10th day of each month commencing April 10, 1935. This agreement was not recorded until June 25, 1940, following its assignment to Wright.

*Assigned by Chairman of Judicial Council.

dated May 17, 1940. On September 16, 1940, Arthur C. Wright and his wife executed an agreement for the sale of the property to the defendant Glenn A. Vroman.[2] The latter made payments on the contract from time to time more or less irregularly from the date of the contract to November 18, 1941. Thereafter on April 18, 1942, Vroman made a payment of $15 which was accepted by the vendor. No further payments, however, were made by Vroman and the Wrights made no effort whatever to enforce the provisions of the agreement of sale. Vroman remained in possession of the property for some years and then leased it to another. He failed to pay the taxes levied and assessed against the property and on June 30, 1950, the property was sold to the state. Vroman continued in possession in person or by a tenant until September 15, 1955, when a lease was executed by the state to one Trent who was, at that time, a lessee of Vroman. On April 16, 1956, Arthur C. Wright and his wife quitclaimed all of their interest in the property to the plaintiff and in May 1956 plaintiff acquired quitclaim deeds from Joe Moch, Emma Moch Ingels and Blanche Moch Smith, who it asserts are the heirs of Lew Moch. There is, however, no proof of this fact nor that these parties succeeded as heirs or devisees to any interest in this property through Lew Moch. On May 31, 1956, plaintiff made a payment in the sum of $108.14 to the county tax collector as an initial step under the statutory five-year plan for the redemption of delinquent taxes assessed Vroman. Following this agents of the plaintiff in the absence of Vroman entered the property, removed the furniture and personal possessions of Vroman and made some repairs to the house including the roof and front steps, put locks on the doors and attempted to rent the property. When a representative of the plaintiff went to the premises he found the defendant Vroman in possession. Plaintiff demanded that Vroman vacate the premises but Vroman refused asserting ownership to the property. On June 18, 1956, the defendant Lettie V. Vroman, mother of Glenn A. Vroman, paid all taxes due upon the property and received a certificate of redemption and on June

[2]This agreement provides that the sales price is $2,750 of which $150 was paid upon the execution of the agreement and the balance of $2,600 is payable in monthly installments of $30 including interest at 7 per cent per annum on the first day of each month commencing October 1, 1940. The agreement further recites that the vendors are purchasing the property under an agreement with Lew Moch providing for monthly payments of $25 per month, "on which there is now an unpaid balance of approximately $2,000.00." This agreement was never recorded.

21, 1956, Glenn Vroman executed a grant deed to Lettie. On July 11, 1956, plaintiff filed the present action.

At the outset and in view of the contentions advanced by the appellant it is necessary to advert to the elementary rule that a plaintiff in order to prevail in a quiet title action must do so on the strength of his own title and not on the weakness of his adversary's. (*Valle* v. *Ingram* (1941), 18 Cal. 2d 761, 767 [117 P.2d 869].) Here there is a total absence of any evidence that the Wrights ever acquired title to the property under the contract of sale executed by Lew Moch and the Lamonts,[3] hence appellant acquired only such rights as against the defendants as the Wrights could assert against the defendants under the contract of sale executed between the Wrights and Glenn Vroman. Insofar as the evidence discloses the record title to the property still stands in Lew Moch subject to the contract of sale executed between him and the Lamonts which was assigned by the latter to Wright and the contract of sale executed between the Wrights and the defendant Glenn Vroman. With these preliminary observations, we pass to a consideration of the various contentions urged by the appellant for a reversal of the judgment.

The first contention is that the trial court erred in admitting proof of the contract between the Wrights and Glenn Vroman because the respondents did not specifically plead the contract. There is no merit to this contention. As said in *Smart* v. *Peek* (1931), 213 Cal. 452, 454 [2 P.2d 380] : "An answer denying the plaintiff's title and right to possession is always sufficient. (*Warden* v. *Stoll*, 210 Cal. 374 [291 P. 835] ; *Hinds* v. *Clark*, 173 Cal. 49 [159 P. 153] ; *Tilton* v. *Russek*, 171 Cal. 731 [154 P. 860] ; *United Land Assn.* v. *Pacific Imp. Co.*, 139 Cal. 370 [69 P. 1064, 1125, 72 P. 988].) Under such an answer the defendant may prove whatever right he may have, including a tax title. (*Hinds* v. *Clark*, supra; *Tilton* v. *Russek*, supra.) "

Appellant further contends that the trial court erred in admitting proof of the contract last mentioned because such proof is inconsistent with the pleaded defense of ownership by adverse possession. The right of a defendant to plead inconsistent defenses has long been recognized in this state. (39 Cal.Jur.2d, p. 276, § 189.) Moreover, we see no inconsistency in the defendants' answer. Their denial of plaintiff's

---

[3]There is no evidence that the Wrights made any payments to Lew Moch under the Lamont contract after it was assigned to them.

allegation that it was the owner of the property and that defendants had no right, title or interest therein put in issue plaintiff's title and this is in nowise inconsistent with the affirmative allegation of title in themselves. The fact that the defendants could not prevail upon their plea of title by adverse possession as against the plaintiff by reason of the fact that the possession of a vendee under a contract of sale is not adverse to the vendor or his successor in interest does not prevent the vendee from challenging the right of the vendor to secure a decree foreclosing the vendee's interest under the contract.

The trial court found that, by reason of the fact that defendants' vendor accepted payments under the contract after the same became due without objection and that neither the Wrights nor the plaintiffs ever made demand upon the defendants to bring the payments due under the contract up to date, or took any steps to declare a forfeiture of the vendee's interest under the contract, the provision of the contract to the effect that time was of the essence thereof was waived by the Wrights and that plaintiff as their successor in interest is bound thereby.

Appellant challenges this conclusion. However, since *Boone* v. *Templeman* (1910), 158 Cal. 290 [110 P. 947, 139 Am.St.Rep. 126], it has been the settled law of this state that the acceptance by a vendor of payments which are past due under an executory contract constitutes a waiver of the right to forfeit the purchaser's interest by reason of breaches which have accrued at or prior to the time when such payment was made and the purchaser may not be again placed in default for the same delinquency until he has been allowed a reasonable time to perform his contract. In such case the right of forfeiture is temporarily suspended until the vendor has given notice of his intention to require strict performance in the future and the purchaser has a reasonable time within which to perform his part of the contract. Moreover, where, as here, the vendor allows the whole purchase price to become due before undertaking to enforce a forfeiture, the payment of the price then becomes a dependent and concurrent condition, and nonpayment alone does not put the vendee in default. In such case the vendor must tender a deed as a condition to demanding payment of the price and he cannot without such tender declare a forfeiture. (See *Community Ind. Land Co.* v. *Walker* (1943), 61 Cal.App.2d 298, 302-303

[142 P.2d 757]; 25 Cal.Jur., p. 614, § 117, and cases there cited.)

While not denying that such is the rule plaintiff asserts that defendants forfeited or waived their right to such notice by reason of the fact that when plaintiff demanded possession of the property defendant Glenn Vroman refused to vacate the same and claimed ownership thereof. We find no merit in this argument. When demanding possession of the premises it neither demanded payment of the balance of the purchase price nor tendered a deed. Indeed, a tender of a deed if made would have been ineffectual because it does not appear that plaintiff was in a position to convey title to the property upon payment of the unpaid balance of the purchase price. Plaintiff further contends that if notice of termination of the contract was required such notice was given when plaintiff demanded possession of the property. However, plaintiff, as successor in interest to the Wrights, could not under the circumstances terminate the contract by mere demand for possession without affording defendants a reasonable time within which to make payment of the unpaid balance of the purchase price. (*Gonzalez* v. *Hirose* (1948), 33 Cal.2d 213, 216 [200 P.2d 793].)

Plaintiff further asserts that the trial court erred in finding that it was not a bona fide purchaser for value without notice of defendants' contract. The uncontradicted evidence is to the effect that the property was assessed to Glenn A. Vroman and that this was known to the plaintiff prior to the time it acquired an assignment of the Lamont contract from the Wrights. Plaintiff adduced no proof to the effect that when they acquired the quitclaim deed from the Wrights it made any inquiry as to what if any interest Glenn Vroman had in the property or if so what information it received from the Wrights with respect thereto. The trial court was justified in inferring that if such inquiry had been made plaintiff would have ascertained the interest of Vroman in the property. Moreover, it affirmatively appears that plaintiff had notice that Glenn Vroman claimed some interest in the property by reason of the fact that almost a year before it acquired the assignment of the contract from the Wrights plaintiff addressed a letter to Glenn Vroman at the address of the subject property offering to purchase his interest therein, in response to which Vroman replied that he was not interested in selling. Under these circumstances it is clear

that the trial court was fully warranted in concluding as it did that the plaintiff was not a bona fide purchaser without notice of Vroman's claim to the property.

 Plaintiff further contends that the court erred in finding that the Wrights and plaintiff as their successor in interest had waived their right to declare a forfeiture of defendant Glenn Vroman's interest under the contract by reason of the fact that defendants did not in their answer seek relief from the forfeiture under Civil Code, section 3275. Under the circumstances no such pleading was required. As we have seen, plaintiff's complaint was one to quiet title and under defendants' denial of plaintiff's allegation of ownership and that defendants had no right, title or interest in the property, defendants were entitled to adduce any proof designed to establish that plaintiff was not entitled to the equitable relief which it sought. (*Selby* v. *Battley* (1957), 149 Cal.App.2d 659, 664-665 [309 P.2d 120].)

In conclusion it is to be noted that the judgment herein does not operate to quiet title in the defendants and they may in no event be entitled to such relief unless and until they pay the balance of the purchase price.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.