[Civ. No. 26030. Second Dist., Div. One. Sept. 4, 1962.]

TEODORO LOPEZ et al., Plaintiffs and Appellants, v.
MARY BELL et al., Defendants and Respondents.

James M. Gammon for Plaintiffs and Appellants.

Koos & Lindstrom and John M. Schwartz for Defendants and Respondents.

LILLIE, J.—The issue at bar concerns the validity of a trustee's sale under a power of sale contained in a deed of

trust. Originally plaintiff Lopez alone sought to restrain such sale. When a demurrer to his complaint was sustained with leave to amend, Lopez filed an amended and supplementary complaint seeking to set aside the trustee's sale conducted during the interim; joining as plaintiffs were the Bautistas who sought an order permitting them to intervene. A demurrer to this amended pleading was likewise sustained with leave to amend; the Bautistas' motion to intervene was denied. A third and supplementary complaint, joining the Bautistas as plaintiffs (despite the denial of their previous motion), was thereupon filed; a demurrer thereto was sustained without leave to amend, and permission to intervene was again denied the Bautistas. The appeal is from the judgment dismissing the action.[1]

Since we are called upon to decide whether the facts alleged afforded any legal ground upon which to hold the trustee's sale invalid, such facts will be stated largely in the language of the complaint as last amended. On November 20, 1956, the Bautistas entered into a written agreement with defendants Bell and Jarrett for the purchase of the real property in question, the total consideration being $25,000. The Bautistas made a down payment of $13,000, a portion of which was advanced by Lopez at the Bautistas' request, and title to the property was eventually placed in Lopez' name. At the same time he also executed a deed to defendant Western Mutual, as trustee, as security for the unpaid balance of the purchase price. Defendant Bell allegedly knew of all these latter facts.

Also, as part of the contract of sale, on November 20, 1956, Lopez executed his promissory note payable to defendants Bell and Jarrett for $12,000 to secure payment of the aforesaid deed of trust. Thereunder payments of $750 were due semiannually, including interest at 6 per cent. It is alleged that thereafter "each of the subsequent semi-annual payments of $750.00 on said note was paid to the defendant Mary V. Bell, long after the due date thereof and the semi-annual instalment due February 16, 1960, was actually paid on or about the 23rd day of May, 1960"; on July 29, 1960, however, "there was paid to the defendant Mary V. Bell $485.06 to apply on the semi-annual instalment due on August 15, 1960." It is then alleged that "on each of the occasions when said semi-annual instalments fell due, the defendant Mary V. Bell wrote to the Bautistas requesting payment of said payments

---

[1] The judgment declares *inter alia* that "said action is dismissed and that plaintiff [Lopez] take nothing by this action, . . ."

and plaintiffs are informed and believe that the defendant Mary V. Bell never at any time communicated with the plaintiff Teodoro Lopez in reference to said payments" save and except that, pursuant to notice from defendant Bell, a notice of default from Western Mutual mailed to Lopez at Brawley, California, was returned unopened.

According to further allegations of the complaint as amended, notice of such default was recorded on or about September 13, 1960; after a lapse of three months, as provided by the governing statute (Civ. Code, § 2924), the trustee on December 22 caused a notice of sale to be filed and published wherein it was stated that the August 15, 1960, instalment was unpaid and declaring that the entire principal of the note ($7,890.70) was delinquent. It is alleged, however, that plaintiffs had no communication regarding either the notice of default or sale until January 13, 1961 (14 days before the date of the sale) when defendant Bell offered the Bautistas $3,000 for a quitclaim deed; the next day this offer was increased to $5,000. The Bautistas then mailed to the trustee the balance of the August instalment ($364.94), which sum was retained by the trustee until January 24 when the defendants' attorney offered to return plaintiffs' money order. Plaintiffs' request for a postponement of the sale for 30 days, which would permit them time to raise the balance due, was also declined.

Finally, it is alleged that plaintiffs were lulled into a sense of security by reason of the acceptance of the several instalments without any notice from the defendants insisting upon prompt future payment thereof. As a further ground for the relief sought, plaintiffs allege that the property was bid in by defendants for $9,500 although the market value at the time of sale was $50,000.

Although plaintiffs' pleading suggests otherwise, we are satisfied that full compliance was had with the procedural requirements contained in the applicable statute (Civ. Code, § 2924) respecting notice of default and sale. Section 2924b provides for the giving of personal notice to any person formally requesting the same, but there is no allegation that such notice was requested. ██ "The only requirements of notice of sale essential to the validity of a sale . . . are those expressly and specifically prescribed by the terms of the instrument and by the provisions of the applicable statutes." (*Lancaster Security Inv. Corp.* v. *Kessler,* 159 Cal.App.2d 649, 652 [324 P.2d 634].) Neither the deed of trust nor the

note are set forth in plaintiffs' pleading; we cannot, therefore, determine what they provided for in the above regard.

 Nor should the sale be set aside because the final bid was assertedly inadequate. Indeed, plaintiffs concede that mere inadequacy of price, however gross, is not alone enough (*Stafford* v. *Russell*, 117 Cal.App.2d 326, 333 [255 P.2d 814]), although they properly argue that gross inadequacy, coupled with some irregularities will justify relief. (*Winbigler* v. *Sherman*, 175 Cal. 270, 275 [165 P. 943].) Thus, it is held in *Winbigler* that where the debtor-owner belatedly learns of the sale and seeks a reasonable postponement to obtain the money needed, refusal by the trustee may constitute unfairness which, coupled with an inadequate price, justifies setting aside of the sale. Such a situation is said to exist at bar; it will be considered in conjunction with the next and major point which is decisive of this appeal.

Since *Boone* v. *Templeman*, 158 Cal. 290 [110 P. 947, 139 Am.St.Rep. 126], it has been settled law that the acceptance by a vendor of payments which are past due under an executory contract constitutes a waiver of the right to forfeit the purchaser's interest by reasons of breaches which have accrued at or prior to the time when such payment was made; accordingly he may not be again placed in default for the same delinquency until he has been allowed a reasonable time to perform his contract. In such case, it is said, "the right of forfeiture is temporarily suspended until the vendor has given notice of his intention to require strict performance in the future and the purchaser has a reasonable time within which to perform his part of the contract." (*Harmon Enterprises, Inc.* v. *Vroman*, 167 Cal.App.2d 517, 522 [334 P.2d 628].) Otherwise stated, "Since the law looks unfavorably upon forfeitures, waiver of the time clause[2] will be deemed to be a waiver of the forfeiture unless the time element is first reestablished by definite notice." (*Gonzalez* v. *Hirose*, 33 Cal.2d 213, 216 [200 P.2d 793].) The above principle has been held applicable to obligations secured by deeds of trust. (*Bledsoe* v. *Pacific Ready Cut Homes, Inc.*, 92 Cal.App. 641, 645 [268 P. 697]; see also *Altman* v. *McCollum*, 107 Cal.App.2d Supp. 847, 858 [236 P.2d 914].) But, say defendants, plaintiffs' pleading specifically alleges

---

[2]While it does not appear that the contract in the present action expressly provided that "time is of the essence," use of the precise expression is not always necessary to make it so. See *Skookum Oil Co.* v. *Thomas*, 162 Cal. 539, 545-546 [123 P. 363]; *Katemis* v. *Westerlind*, 142 Cal.App.2d 799 [299 P.2d 383].

the giving of written notice and demand for payment of the instalment due on August 15—presumably they refer to the allegation, quoted earlier, that "on each of the occasions when said semi-annual instalments fell due, the defendant wrote to the Bautistas requesting payment of said payments. . . ."

We are satisfied, however, that the mere request for payment after the due date does not meet the requirement mentioned in the cases above cited, namely, the giving of written notice (after acceptance of such payment) that strict performance of the contract's covenants will be necessary in the future. To be reasonably definite, the notice should recite in substance that "unless payment was made on 'a date fixed therefor, far enough in the future to give the purchaser reasonable time and opportunity to comply with his contract by making the payments, the contract will be terminated and forfeiture will take place.' [Citations.]" (*Lamont* v. *Ball,* 93 Cal.App.2d 291, 293 [209 P.2d 9].)

This is not to say that defendants by proper pleading and proof may not ultimately establish what was expected of them under the circumstances; but the sole question for present determination is the sufficiency of the facts to constitute a cause of action. Although there are cases holding that the mere acceptance of one payment after its maturity does not constitute a waiver of the right to declare a forfeiture (see citations in *Boone* v. *Templeman, supra,* 158 Cal. 290, 296), as in *Boone,* we have much more than this in the present case.

Seven semiannual payments in succession, it is alleged, were accepted after maturity and without objection or protest of any kind. Other facts are alleged which have a strong appeal to a court of equity. "We think from these facts a court might infer a waiver of the conditions regarding forfeiture and time and that they supported a general allegation of the complaint that [defendants] had waived those conditions." (*Boone* v. *Templeman, supra,* at pp. 296-297.) It was error, therefore, to sustain the demurrer to the complaint as last amended.

As noted at the outset of this opinion, the appeal is from the judgment of dismissal as to Lopez only; although the order denying the motion to intervene is an appealable one (*Bowles* v. *Superior Court,* 44 Cal.2d 574, 582 [283 P.2d 704]), no appeal was taken by the Bautistas therefrom. Plaintiffs have clearly labored under the mistaken impression that such order can be reviewed on appeal from the final judgment. But the answer to this position is that by the denial of their

motion, the Bautistas never became a party to the action or judgment; as to them, the court's order ended the litigation and their remedy thereafter was by timely appeal. (*Dollenmayer* v. *Pryor*, 150 Cal. 1, 3 [87 P. 616]; see also *Braun* v. *Brown*, 13 Cal.2d 130, 133 [87 P.2d 1009], and authorities there cited.) Notwithstanding the above, the appeal is meritorious as to Lopez; furthermore, defendants in no wise contend that the result hinges on the exclusion of the Bautistas as party litigants.

The judgment is reversed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied September 24, 1962.